Argued July 24, affirmed August 6, petition for rehearing denied
August 30, petition for review denied October 2, 1973

STATE OF OREGON, *Respondent, v.* TEDDY
LAMAR COCKRUM (No. 39363),
*Appellant.*
512 P2d 1373

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg,
argued the cause for respondent. With him on the brief

was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant appeals from conviction of first degree burglary. ORS 164.225. The pertinent part of this statute provides that a person commits the named crime if he unlawfully enters into or remains in a building to commit a crime therein and while effecting entry or while in the building he "[i]s armed with a burglar's tool as defined in ORS 164.235 * * *."

Defendant's assertions of error are (1) that there was insufficient proof that he used or was armed with a burglar tool and (2) that ORS 164.225 and the definition of a burglar tool in ORS 164.235 are unconstitutional in that the definition is so vague as to fail to convey its meaning to a person of ordinary understanding. The part of ORS 164.235 which defines a burglar tool states that it is one of a number of specifically named devices

"* * * or any other explosive, tool, instrument or other article adapted, designed or commonly used for committing * * * forcible entry * * * or theft by a physical taking."

Evidence was that a service station in Myrtle Creek had been unlawfully entered by breaking a rear window thereof. A piece of a concrete block was lying with pieces of glass under the broken window. It was inferable that the block was the instrument used in the breaking. Inside the service station a locked drawer had been forced open by prying out the hasps into

which the drawer lock fitted. Nearby was an arbor[1] which the station owner testified had at some previous time been used for a power grinding apparatus, but which was at the time lying dismantled and unused. A picture in evidence discloses that this particular arbor is a metal shaft, one end of which is tapered and has no attachments upon it. Upon this end of the bar in threads grooved thereon was found dried paint residue which matched that of the drawer from which the lock hasps had been forced.

A positive identification of defendant's palm print upon some of the disturbed property inside the service station as well as eyewitness testimony of people who conversed with defendant near the service station at about the time of the burglary (which was about midnight) tied defendant to the crime.

■ ■ We hold that the piece of concrete block and the arbor, under the evidence in this case, were burglar tools as defined in ORS 164.235 (2). Each of these was an article adapted to facilitating forcible entry into the premises or theft by physical taking therein. It is difficult to think of an article more adapted to breaking a window as part of effecting forcible entry into a building than a concrete block or a rock. It also is difficult to think of an article more adapted to prying the hasps of a lock from a wooden drawer than an iron bar like that formed by the bare end of the arbor. Many cases from many jurisdictions illustrate the correctness of what we hold here. Two ex-

---

[1] Webster's New Twentieth Century Dictionary 95 (unabridged 2d ed 1964), defines "arbor":

"Arbor * * * in mechanics: (a) a shaft; beam; (b) a spindle; axle; (c) a bar that holds cutting tools."

The testimony makes it clear that it is in this sense that the term was used.

haustive annotations of such cases can be found in Annotation, 103 ALR 1313, 1322 (1936), and Annotation, 33 ALR3d 798 (1970). At p 867 of the latter annotation the editor cites many authorities in support of the proposition:

> "It has generally been held that if implements are suitable for or capable of being used in committing burglary, it is immaterial for the purpose of classifying them as burglars' tools that they were originally designed and intended for honest and lawful purposes."

Specifically, in *The State v. Ferrone,* 97 Conn 258, 116 A 336 (1922), it was held that iron bars, if not technically implements of illegal breaking, still were implements reasonably adapted for use in such illegal breaking.

■ ■ We do not find the vagueness for which defendant contends in the statutory definition of burglar tools. In this respect we agree with the Washington and Kansas Supreme Courts where similar statutory definitions were construed. In *State v. Hart,* 200 Kan 153, 159, 434 P2d 999 (1967), quoting *State v. Hill,* 189 Kan 403, 411, 369 P2d 365, 91 ALR2d 750 (1962), the court said:

> " '. . . The test is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice.' * * *"

The Kansas court held that even "stupid" burglars would understand the definition. In *State v. McDonald,* 74 Wash 2d 474, 445 P2d 345 (1968), the Supreme Court of Washington relied upon *State v. Hart,* supra, and noted that the language of the Washington statute which in its general definitive provision is almost identical to that of the Oregon statute has repeatedly

been held sufficient against challenges based upon the ground of vagueness.

Most of the cases in which statutory definitions of burglar tools have been challenged have arisen where the crime charged is possession of the tool as distinguished from being an element in the classification of the burglary itself, which is the situation in the case at bar.

Affirmed.