Argued July 18, reversed and remanded October 2, 1978

# STATE OF OREGON, *Respondent,*
## *v.*
# WILLIAM JAMES REID, *Appellant.*
## (Case No. 24561, CA No. 10229)
### 585 P2d 411

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kathleen A. Dodds, Certified Law Student, Eugene, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Defendant appeals his conviction following a jury trial for Burglary in the First Degree, ORS 164.225. Defendant makes four assignments of error: (1) that he was denied the assistance of counsel of his own choosing; (2) that it was error to admit testimony of the arresting officer that defendant refused to make a statement after being advised of his rights; (3) that the court erred in denying his requested continuance; and (4) there was insufficient evidence to sustain a conviction for first degree burglary.

The relevant facts necessary to discuss the issues raised by defendant are that about 11:30 p.m. on the day the crime was committed, four witnesses heard the sound of breaking glass. They looked across the street from their vantage point and saw defendant reaching through the broken window of a jewelry store and removing items from the merchandise display. He left the scene and went to a nearby tavern where he was apprehended by the police approximately five minutes later in possession of numerous items taken from the jewelry store. Pieces of broken beer bottle were found inside the jewelry store window and it was inferable the beer bottle had been used to break the window.

Following a preliminary hearing in the district court, defendant was charged, by information, with the crime of Burglary in the First Degree. The information alleged that in effecting the entry in the jewelry store defendant "was armed with a burglar's tool, to-wit: a beer bottle."

The district court appointed the public defender to represent the defendant, who was indigent. The defendant rejected the assistance of the public defender and conducted his own defense during the preliminary hearing. During arraignment in the circuit court, the public defender was again appointed. The defendant again rejected the public defender, stating he wanted another attorney appointed because

the public defender represented all criminal defendants and would not have the time to devote to his case. The court told defendant the public defender would be available to assist him, but no other attorney would be appointed. Defendant then decided to represent himself. The public defender sat with defendant during trial, but defendant refused to consult with him. The defendant entered oral pleas of not guilty and not guilty by reason of mental disease or defect.

During trial the arresting officer was allowed to testify, over objection, that after defendant was advised of his constitutional rights, he stated he would not talk to the officer because anything he said would be used against him. The court explained, in ruling on the objection, the evidence was relevant to rebut the defense of mental disease or defect.

Sometime prior to trial the state gave the police reports and witnesses' statements to the public defender. These statements and reports were given to the defendant by the public defender after the jury was empanelled and just prior to opening statements. Defendant requested additional time to prepare his case, stating he had not previously seen the material handed to him. The court recessed for a short period of time to allow defendant to read the reports. Following the recess, defendant continued to protest that he had insufficient time to prepare, but told the court he had read the reports and was ready to proceed. The state made its opening statement before the luncheon recess and the court told defendant he would have additional time during the lunch recess to complete his review of the reports.

The court discussed the proposed jury instructions, including a definition of burglar's tools, at some length with the prosecutor and the defendant. Defendant made no objection to the instructions or the evidence respecting the alleged burglar's tool and did not move for dismissal of the Burglary in the First Degree charge. The issue regarding the sufficiency of the

evidence to sustain the verdict is raised for the first time on appeal.

Defendant's first claim of error is that he was denied assistance of counsel of his own choice. An indigent defendant has no constitutional right to a particular attorney. Due process of law is satisfied if he has the assistance of competent counsel. He may waive the proffered counsel and elect to represent himself. *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975). Having rejected able counsel and chosen to represent himself he cannot claim ineffective representation. ORS 135.050(4) provides the court *may* substitute one appointed counsel for another "when the interests of justice require such substitution." In the posture of this case, the interests of justice did not require appointment of another attorney. *See State v. Glover,* 33 Or App 553, 577 P2d 91 (1978).

The defendant next asserts it was error to allow the officer to testify respecting defendant's response after he was advised of his constitutional rights. It is argued, such evidence is a comment on the exercise of his constitutional right to remain silent, contrary to *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965).

In approaching the issue of the admissibility of such evidence, the first inquiry is whether it is relevant. If relevance is established, the next question is whether there are impermissible inferences which can be drawn from the evidence which, when weighed against the probative value inherent in relevancy, requires its exclusion.

When faced with a defense based on mental disease or defect, the state may present evidence of defendant's mental or emotional condition at or near the time the crime was committed, even though the evidence may be otherwise inadmissible. *See State v. Small-wood,* 277 Or 503, 561 P2d 600 (1977); *State v. Olds,* 35

[ 421 ]

Or App 305, 581 P2d 118 (1978); *State v. Goss,* 33 Or App 507, 577 P2d 78 (1978).

■ In the case at issue, although the defense of mental disease or defect was raised by the defendant's plea and submitted by the court's instructions, there was little evidence presented to sustain or rebut the defense. No experts testified and the defendant presented no evidence. However, in the unusual circumstances of this case, we conclude the probative value of the evidence outweighted any prejudice to defendant. The jury had an opportunity to observe defendant's mental condition during the trial as he conducted his own defense. The state was entitled to rebut any inferences the jury would draw respecting his mental condition by presenting evidence he acted rationally within a few minutes after the crime was committed.

The challenged evidence was presented by the state's first witness at a time when the state would be unaware what it had to rebut. In closing argument the state asked the jury to infer from this evidence the defendant was acting normally and rationally at the time he was arrested. The state did not argue any other inference could be drawn.

Even if we assume the jury could draw an improper inference from this evidence sufficient to outweigh the probative value respecting his mental condition, reversal is not required. The evidence of defendant's guilt was substantial. Three eyewitnesses identified defendant as the person they saw removing merchandise from the broken jewelry store window. They pointed out the defendant to the police minutes later as he sat in a nearby tavern. He was apprehended immediately and was in possession of numerous items taken from the jewelry store. It was very unlikely the jury's verdict was affected by the potential improper inference that could be drawn from the evidence. Improper admission of this evidence would be an error of constitutional magnitude; but we conclude if it was error it was harmless beyond a reasonable doubt.

■ The next claim of error is an assertion the court should have granted defendant a continuance to prepare his defense. This argument is based on the fact the defendant was not personally given the discoverable items by the state until after the jury had been empanelled. He asserts the limited opportunity to review the material deprived him of an adequate opportunity to prepare his case.

The argument had two facets: first, whether there was adequate disclosure under ORS 135.873; and secondly, whether the court abused its discretion in denying a continuation of the trial.

Although defendant was given the materials on the day of trial, they had been earlier given to the attorney appointed to assist him. This attorney was under orders of the court to assist defendant even though defendant elected to represent himself. The state could reasonably assume the material would be presented to defendant by his appointed counsel.

The court, however, was faced with the unusual situation where the defendant rejected any help from his appointed counsel and proceeded on his own. In response to this situation, the court did not abuse its discretion in allowing a recess and denying a continuance. The reports and witnesses' statements were described as "short" and brief. Defendant had an adequate opportunity to review the statements and utilized them during his cross-examination of the witnesses. The defendant has demonstrated no substantial prejudice by the late receipt of the statements or denial of a continuance.

■ The final assignment of error urged by defendant concerns the sufficiency of the evidence to sustain the conviction for first degree burglary. Specifically, defendant argues a beer bottle is not a burglar's tool as defined in ORS 164.235(2). Defendant concedes in his brief that he made no objection or exception respecting this issue during trial. Ordinarily we decline to consider on appeal issues not raised in the trial court.

However, in this instance, since we conclude a prior controlling decision of this court was in error and must be overruled, we will consider the claim of error.

Analysis of the issue must begin with an appreciation of the statutory scheme of punishment for burglary. ORS 164.215 defines Burglary in the Second Degree as any unlawful entry or remaining in a building with intent to commit a crime therein. The maximum incarceration for Burglary in the Second Degree is five years. Burglary in the First Degree, for the purposes of this case, is the commission of a Burglary in the Second Degree while armed with a burglar's tool. The maximum incarceration is 20 years. The 15 years enhanced penalty for possession of a burglar's tool, while committing a second degree burglary, makes the definition of burglar's tool significant. The significance is graphically illustrated by this case. Had the defendant used his naked fist to break the window he would have been guilty only of Burglary in the Second Degree. Since he used a beer bottle in place of a fist, he was convicted of first degree burglary. He was given a sentence of ten years. Since the maximum penalty for second degree burglary is five years' incarceration, five years of his sentence is attributable solely to his use of the beer bottle to break into the jewelry store.

If, as the state argues, any item actually used to make a forcible entry is a burglar's tool, there is little left of the crime of second degree burglary. A person would be guilty of second degree burglary only if his entry was not forcible or if he unlawfully remained on the premises or employed a naked part of his body to effect the entry.

Burglar's tools are defined in ORS 164.235(2) to mean "any * * * tool, instrument, or other article adapted, designed or commonly used for committing or facilitating a forcible entry * * *." We do not agree with the implication of the state's argument that "adapted" means, "was actually used." This would, in

essence, amend the statute to read that a burglar's tool is "any item which has been used to effect entry." Had the legislature intended the enhanced penalty of 15 years to apply when any item was used to effect the entry it presumably would have clearly said so.

The legislative history of ORS 164.225, insofar as it elevates second degree burglary to Burglary in the First Degree, because of use or possession of a burglar's tool, is sparse. The legislative committee, considering this provision of the criminal code, stated it was to get at the professional burglar. Minutes, House Judiciary Committee, March 12, 1971, p 3-4. The desire of the legislature to get at the professional burglar is reflected in the enhanced penalty of 15 years for use or possession of a burglar's tool in committing a second degree burglary. It is difficult to devise a definition of a professional burglar. The legislature undoubtedly had in mind the person who consciously provides himself with tools of his surreptitious trade. It is difficult to imagine the legislature would consider a person who impulsively smashed a window with a handy object to be a professional burglar employing a burglar's tool.

With this legislative framework in mind, i.e., the intent to more severely punish professional burglars using burglar's tools, we approach the statutory definition of burglar's tools. The definition contained in ORS 164.235(2) is an adaptation of a similar provision in the Michigan Criminal Code,[1] Proposed Oregon Criminal Code 146, § 138 (1970).

---

[1] Michigan Revised Criminal Code, § 2615 (1967) provides:

"(1) A person commits the crime of possession of burglar's tools if he:

"(a) Possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking; and

"(b) Intends to use the thing possessed, or knows that some person intends ultimately to use the thing possessed in the commission of an offense of the nature described in subparagraph (a)."

The Michigan Supreme Court, in 1923, held a set of common housekeys, an alarm clock with a battery attached and knitting needles were not burglar's tools. *People v. Dorrington,* 221 Mich 571, 191 NW 831 (1923). The court said the terms "adapted" and "designed" in the statute describing burglar's tools "means something more than mere common household articles capable of use in breaking and entering. To come within the statute, the tools must not only be adapted, that is, capable of being used in breaking and entering, but as well designed, that is, contrived or taken to be employed for such purposes." 221 Mich at 574. This construction of the statute was reaffirmed by the Michigan court in 1971. *People v. Murphy,* 28 Mich App 150, 184 NW 2d 256 (1970). Thus, the Michigan court, in construing the direct progenitor of the Oregon statute, determined it was not sufficient that an article be capable of use in committing a forcible entry, and presumably it would not be sufficient to prove only that it was put to such use.

Burglar's tools are defined in terms of their character and not necessarily their use. The statute (ORS 164.225(1)(a)) imposes the enhanced penalty if the burglar is armed with a burglar's tool; it is not restricted to situations where the tool is used for forcible entry. The actual use of the item may be a demonstration it is capable of such use, but it is not

This proposed statute was not enacted by the Michigan Legislature. The Commentary to the Proposed Oregon Criminal Code 146 § 138 (1970), states: "Both of these states [Michigan and New York] had comparable provisions in their respective criminal codes prior to the revisions and the new sections were designed to modernize and strengthen previous statutes."

The Michigan statute (C.L. 750.116) as it existed in 1970, *see People v. Murphy,* 28 Mich App 150, 184 NW 2d 256 (1970), provided:

"Any person who shall knowingly have in his possession any nitroglycerine, or other explosive, thermite, engine, machine, tool or implement, device, chemical or substance, adapted and designed for cutting or burning through, forcing or breaking open any building, room, vault, safe or other depository, in order to steal therefrom any money or other property, knowing the same to be adapted and designed for the purpose aforesaid * * *."

sufficient, in and of itself, to establish that the item is "adapted, designed or commonly used" for committing forcible entry. *See State v. Godwin,* 3 NC App 55, 164 SE 2d 86 (1968).

In determining if a particular item comes within the general phraseology of a statute it is proper to utilize the statutory construction tool known as *ejusdem generis.* This maxim is founded on the logical proposition that if the legislature had intended the general words of the enactment to be used in their unrestricted sense, the specific, particularized words would have been omitted. ORS 164.235(2) says burglar tools mean "an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or any other explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating forcible entry * * *." Had the legislature intended burglar tools to be defined in terms of use or intended use, it would have been unnecessary to list any particular item. A "thermal lance" if actually used or intended to be used for unlawful forcible entry, would, by that fact alone, be a burglar's tool.

Of necessity the category of burglar's tools must be circumscribed in general terms. Courts and legislatures are not equipped to predict the ingenuity of burglars in employing instruments for forcible entry. But, if a line must be drawn so burglars may be aware whether they are committing second or first degree burglary, we draw that line to exclude beer bottles and concrete blocks. *See State v. Cockrum,* 14 Or App 431, 512 P2d 1373, *rev den* (1973).

A workable definition, consistent with the legislative purpose as outlined, would require the state to prove the particular item was reasonably adapted, was specifically designed or was commonly used for the express purpose of forcibly entering a building. This

category, again of necessity, is little more specific than the statute itself. By way of illustration, a hammer is reasonably adapted to pounding and can be, by that characteristic, reasonably adapted to forcibly breaking through the outer limits of a building. A beer bottle is not. Its essential character is not changed simply because it was used to break a window in conjunction with the requisite criminal intent.

The state, in its argument, takes refuge in our prior decision in *State v. Cockrum, supra.* It is a proper refuge if that was a correct decision since there is little material distinction between a beer bottle and a piece of concrete respecting their status as burglar tools. Applying the principle of *ejusdem generis* neither a beer bottle nor a piece of concrete fall within the category of items described in the statute. Neither has the characteristic of an item reasonably adapted to forcible entry. Their use for that purpose does not change their character. We conclude *State v. Cockrum, supra,* was incorrectly decided, insofar as it held a piece of concrete is a burglar's tool, and is overruled.

■ Since the evidence was sufficient to establish the elements of a second degree burglary, and the jury, by its verdict, necessarily found these elements proven, we reverse and remand for entry of a judgment of guilty of Burglary in the Second Degree and resentencing for that crime.

Reversed and remanded.