HODGES, *Petitioner,*
*v.*
REAL ESTATE DIVISION, *Respondent.*
(No. CA 12041)

594 P2d 1286

Nikolaus Albrecht, P. C., Portland, argued the cause and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

BUTTLER, J.

**BUTTLER, J.**

Petitioner appeals from an order of the Real Estate Commissioner (Commissioner) suspending his real estate sales license for 60 days upon a finding of violations of ORS 696.301(4), (9) and (32).[1] Petitioner's assignments of error fall into two categories: (1) his acts do not fall within the acts proscribed by the statute and (2) if they do, there is not substantial evidence in the record taken as a whole to support the findings of the Commissioner.

Petitioner was employed as a real estate salesperson at Re/Max East, Inc. on August 1, 1977. In October, 1977, the petitioner heard from his mother-in-law that the daughter of her neighbor was planning on selling her home. He telephoned that person and set up an appointment to discuss the potential sale. At the owner's home, after discussing how much she could realize on the sale and what type of house she planned on buying with the proceeds, petitioner prepared, and the owner signed, a Multiple Listing Agreement[2]

---

[1] ORS 696.301(4), (9) and (32) provides:

"The commissioner may suspend or revoke the real estate license of any real estate licensee or reprimand any licensee, or may deny the issuance of a license to an applicant, who has done any of the following:
"* * * * *

"(4) Failed, within a reasonable time, to account for or to remit any moneys or to surrender to the rightful owner any documents or other valuable property coming into his possession which belongs to others.
"* * * * *

"(9) Solicited, sold or offered for sale real property by offering 'free lots' or conducted lotteries or contests, or offered prizes or other inducements for the purpose of influencing a seller or purchaser or prospective seller or purchaser of real property.
"* * * * *

"(32) Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

[2] The broker was a member of Oregon Multiple Listing Service (OMLS). This service allows all members to publish their listing in a book that is circulated to all other OMLS members, thereby exposing the property to a large market. The OMLS book lists the commission percen

which provided for a sales commission to petitioner of seven percent upon the sale of the house.

Following that event, petitioner prepared an addendum to the agreement, which is the focal point of this controversy. It provides that petitioner will "reimburse the owner at closing (1%) one percent of sales commission if seller retains me as agent in purchase of next home."[3] He testified that he offered the reduction so as to increase the net amount the owner would realize out of the sale of her home, thereby giving her a little more flexibility in the purchase of her next home. Petitioner had authority from his broker to charge either a six or a seven percent sales commission.

The listing agreement was delivered by petitioner to his broker the following day; however, he retained the addendum, intending to use it as an escrow instruction,[4] until his broker learned of its existence approximately 30 days later. At that time he delivered it to his broker.

The Commissioner found that petitioner's actions in offering a reduced commission to the seller constituted an inducement for the purpose of influencing the seller in violation of ORS 696.301(9), that not surrendering the addendum to his broker violated ORS

tage so as to inform cooperating brokers the amount that they would earn if they found a buyer; the selling broker usually would receive 45 percent of the commission, the listing broker would receive 55 percent.

[3] It is agreed that the effect of the language was to reduce the sales commission from 7% to 6%. The commission found, on disputed testimony, that the reimbursement was applicable only if the seller purchased a new house through him, and that the seller was induced, in part, to enter into the agreement by that promise.

[4] Petitioner testified that the addendum was withheld for the purpose of reflecting a seven percent rather than a six percent commission in the OMLS book. A cooperating broker would therefore be paid his commission based on 45 percent of a seven percent commission rather than of a six percent commission. The shortage in total commission (due to the reimbursement to the owner) would then be adjusted in escrow pursuant to the addendum, whereby the petitioner would take the necessary reduction in his commission.

[246]

696.301(4), and that those actions together constituted bad faith and improper dealings in violation of ORS 696.301(32).

■ In its prohibition against the use of certain inducements to influence sellers, purchasers, or prospective sellers or purchasers, the legislature specified "offering 'free lots' or conduct[ing] lotteries or contests, or offer[ing] prizes" followed by the general phrase "or other inducements." ORS 696.301(9). Where specific types of conduct are enumerated, followed by general words, the rule of statutory construction known as *ejusdem generis* instructs us that the general words are not to be construed in their broadest sense, but are to be limited to conduct of the same kind or class. This rule is founded on the logical proposition that if the legislature had intended the general words of the enactment to be used in their unrestricted sense, the specific, particularized words would have been unnecessary. *State v. Reid*, 36 Or App 417, 426, 585 P2d 411 (1978). In other words, only activities which are of the same general class or nature as those enumerated are prohibited.

■■ A real estate salesperson's success depends on that person's ability to persuade prospective buyers and sellers of real property to use him as their agent. To accomplish that goal, the salesperson, as a matter of course, will use various forms of "inducements" ranging from a warm smile and handshake to those activities which, because of their potential for abuse, may border on fraud. It is only those inducements which fall into the latter end of the spectrum which the legislature intended to prohibit: lotteries, contests, prizes, free lots. Such activities, and those of a similar type or class, fall within the statutory proscription to prevent persons from being induced to buy or sell by being misled by such schemes. Given that legislative classification, petitioner's promise to reimburse the seller a portion of the sales commission if the seller purchased a new house through him does not fall

[247]

within the class of activities the legislature sought to prohibit in ORS 696.301(9).

Subsection (4) of ORS 696.301 authorizes the Commissioner to impose sanctions on a real estate licensee if the licensee fails, within a reasonable time, to surrender to the "rightful owner" any documents coming into his possession which belong to others. The Commissioner found that:

> "The inducement * * * was reduced to writing * * * in a document referred to by Ronald V. Hodges as an addendum to the employment agreement. Said addendum was not tendered by Ronald V. Hodges to his employing broker * * *."

The Commissioner concluded that petitioner violated the above subsection by failing, within a reasonable time, to turn the addendum over to his broker. We agree with the Commissioner that the broker may be considered the "rightful owner" of the addendum and that petitioner's failure to turn it over constituted a violation of the statute.

The Commissioner also concluded that petitioner's actions in offering the inducement and in failing to turn over documentation to his broker constituted bad faith and improper dealings in violation of ORS 696.301(32). Because we have decided that petitioner's offering a reduced commission did not violate the statute, that conclusion may no longer be valid. Therefore we remand to the Commissioner for reconsideration of the conclusions of law and the sanction imposed.

Reversed and remanded.