Argued and submitted July 27, 1983, affirmed March 7, reconsideration denied April 20, petition for review allowed May 15, 1984 (297 Or 124)
See 298 Or 640, 696 P2d 1052 (1985)

# STATE OF OREGON,
*Respondent,*

*v.*

# FOREST DEWAINE WARNER,
*Appellant.*

(10-82-02595; CA A25336)

677 P2d 733

Robert N. Peters, Staff Attorney, Public Defender Services of Lane County, Inc., argued the cause and filed the brief for appellant.

Sally Leisure, Special Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals from a conviction under ORS 164.225(1)(a) for burglary in the first degree, asserting that the I-beam signpost which he used to effect entry into a building is not within the statutory definition of "burglar tool" and that his conviction therefore should be reduced to burglary in the second degree. We affirm.

Defendant and an accomplice were caught inside a storage barn by the owner, who detained them until the police arrived. There was evidence that a steel I-beam, about one and one-fourth inch by one and three-eighths inch wide and 92 inches long with two small Northwest Natural Gas Company signs affixed at one end, had been used to pry a hasp and padlock from the barn door to gain entry. The signpost, which had been pulled from the ground at a point across the road from the barn, was found lying alongside the barn. There were fresh gouges in the barn door directly below the latch and dry wood chips on the end of the I-beam. On appeal, defendant does not contend that he is not guilty of burglary in the second degree; the sole question is whether the signpost fits within the statutory description of "burglar tool" to support his conviction of burglary in the first degree under ORS 164.225(1)(a).

ORS 164.225(1)(a) provides:

"(1)   A person commits the crime of burglary in the first degree if he violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

"(a)   Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon * * *."

The definition of burglar tool is contained in ORS 164.235(2):

"(2)   'Burglar tool' means an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitro-glycerine, dynamite, gunpowder or any other explosive, tool, instrument or other article *adapted, designed or commonly used* for committing or facilitating a forcible entry into premises or theft by a physical taking." (Emphasis supplied.)

Defendant argues that, as a matter of law, a trier of fact could not find the signpost to be an instrument "adapted, designed or commonly used" for committing or facilitating a forcible entry. We conclude that it could and, therefore, affirm.

In *State v. Cockrum,* 14 Or App 431, 512 P2d 1373, *rev den* (1973), we initially examined the meaning of "burglar tool." In that case, we adopted a broad definition, holding that a piece of concrete block, apparently used to break a window to gain entry into a service station, and an arbor (described as a metal shaft with a tapered end), apparently used to force the lock hasps from a drawer, were burglar tools:

> "We hold that the piece of concrete block and the arbor, under the evidence in this case, were burglar tools as defined in ORS 164.235(2). Each of these was an article adapted to facilitating forcible entry into the premises or theft by physical taking therein. It is difficult to think of an article more adapted to breaking a window as part of effecting forcible entry into a building than a concrete block or a rock. It also is difficult to think of an article more adapted to prying the hasps of a lock from a wooden drawer than an iron bar like that formed by the bare end of the arbor. Many cases from many jurisdictions illustrate the correctness of what we hold here. Two exhaustive annotations of such cases can be found in Annotation, 103 ALR 1313, 1322 (1936), and Annotation, 33 ALR3d 798 (1970). At page 867 of the latter annotation the editor cites many authorities in support of the proposition:
>
>> " 'It has generally been held that if implements are suitable for or capable of being used in committing burglary, it is immaterial for the purpose of classifying them as burglars' tools that they were originally designed and intended for honest and lawful purposes.'
>
> "Specifically, in *The State v. Ferrone,* 97 Conn 258, 116 A 336 (1922), it was held that iron bars, if not technically implements of illegal breaking, still were implements reasonably adapted for use in such illegal breaking." 14 Or App at 433.

Under our decision in *Cockrum,* the term "adapted" appeared to equate with "actually used." In *State v. Reid,* 36 Or App 417, 428-29, 585 P2d 411 (1978), however, we specifically repudiated that interpretation and overruled *Cockrum* insofar as it held a piece of concrete to be a burglar's tool. In *Reid,* we held that a beer bottle used by the defendant to break

a jewelry store window was not a burglar tool within the statutory meaning, determining that the legislature did not intend the enhanced penalty for use or possession of a burglar tool in committing what would otherwise be a second degree burglary to apply to a person who "impulsively smashed a window with a handy object." 36 Or App at 425. We concluded that for an item to be "adapted" as a burglar tool within the statutory definition its essential character must be reasonably consonant with the illegal purpose for which it was used. By way of illustration, we explained that a hammer could be classified as a burglar tool, because "a hammer is reasonably adapted to pounding and can be, by that characteristic, reasonably adapted to forcibly breaking through the outer limits of a building." 36 Or App at 428.

■■ We adhere to the *Reid* analysis here. To classify an item as a burglar tool on the basis that it is adapted for effecting forcible entry requires that the inherent qualities of the item render it reasonably suitable for effecting such entry. Applying that standard to the present case, we conclude that the I-beam signpost at issue here could be found by a trier of fact to be a burglar tool. The I-beam is a steel bar reasonably suitable by its cross section and length for prying and, by those characteristics, is reasonably adapted to effecting a forcible entry. That it may have had signs attached at one end and had been originally used for a legitimate purpose does not affect those characteristics. Defendant was armed with a "burglar tool" within the statutory meaning and was properly convicted of burglary in the first degree under ORS 164.225(1)(a).

Affirmed.