Argued and submitted July 10, 1984, reversed and remanded February 20, reconsideration denied March 26, 1985

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## FOREST DWAINE WARNER,
*Petitioner on Review.*

(10-28-02595; CA A25336; SC S30596)

696 P2d 1052

Robert N. Peters, Staff Attorney, Public Defender Services of Lane County, Eugene, argued the cause and filed the brief for petitioner on review.

Roy Pulvers, Salem, argued the cause for respondent on review. On the brief was Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Sally Leisure, Special Assistant Attorney General, Salem.

ROBERTS, J.

## ROBERTS, J.

The question is whether a metal signpost is a burglar's tool so as to render defendant vulnerable to the charge of burglary in the first degree.

Defendant was convicted of burglary in the first degree and he appeals. He broke into a locked barn by prying a hasp and padlock from the barn door with a Northwest Natural Gas Company signpost. The signpost was a seven and one-half foot long steel I-beam with a yellow warning sign to mark underground cable still attached at the top. The Court of Appeals affirmed. 67 Or App 251, 677 P2d 733 (1984). We reverse.

Burglary in a building other than a dwelling is second degree burglary, classified as a Class C felony. ORS 164.215. The maximum period of incarceration is five years. ORS 161.605(3). The crime is elevated to burglary in the first degree if the defendant "in effecting entry or while in a building or in immediate flight therefrom * * * is armed with a burglar's tool as defined in ORS 164.235 * * *." First degree burglary is a Class A felony, carrying a maximum sentence of 20 years. ORS 161.605(1). The legislature obviously considered possession of a burglar's tool a serious enhancement factor.

Burglar's tools are defined at ORS 164.235 as follows:

" 'Burglar tool' means an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or any other explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking."

Defendant concedes his guilt with regard to second degree burglary. He argues, however, that a signpost is not a burglar's tool as that term was envisioned by the legislature to elevate the offense. He argues that this signpost was neither "adapted, designed [n]or commonly used for committing or facilitating a forcible entry into premises * * *."

## BACKGROUND OF THE STATUTE

Oregon enacted its statute proscribing possession of burglar's tools in 1971. Before that time, possession of burglar's tools was not a crime in Oregon. *State v. Rater,* 253 Or

109, 453 P2d 680 (1969). For many states, however, statutes proscribing possession of tools and implements of housebreaking are not a recent phenomenon. A British statute "for the Punishment of idle and disorderly Persons, and Rogues and Vagabonds" declared that

> "every Person having in his or her Custody or Possession any Picklock, Key, Crow, Jack, Bit or other Implement, with Intent feloniously to break into any Dwelling House, Warehouse, Coach House, Stable or Outbuilding * * * shall be deemed a Rogue and a Vagabond, within the true Intent and Meaning of this Act; and it shall be lawful for any Justice of the Peace to commit such offender (being thereof convicted before him by the Confessions of such offender, or by the Evidence on Oath of One or more credible Witness or Witnesses) to the House of Correction, there to be kept to hard Labour for any Time not exceeding Three Calendar Months * * *." 5 Geo IV, quoted in 3 Chitty, *Practical Treatise on the Criminal Law* 1116 (1841).

By the turn of the century many American states had similar statutes[1] and, today, only a few states lack such a proscription.[2]

---

[1] Ala Code § 13-2-45 (1977), enacted in 1852; Ariz Rev Stat Ann § 13-1505 (1978), enacted in 1901; Ark Stat Ann § 41-1006 (1947), enacted in 1915, repealed in 1975; Cal Penal Code § 466 (West 1970), enacted in 1872; Conn Gen Stat Ann § 53a-106 (West 1972), enacted in 1902; Fla Stat Ann § 810.06 (West 1976), enacted in 1868; Idaho Code § 18-1406 (1979), enacted in 1864; Ill Ann Stat ch 38, § 19-2 (Smith Hurd 1977), enacted in 1845; Iowa Code Ann § 713.4 (West 1979), enacted in 1851; Md Ann Code art 27, § 490 (1982), enacted in 1809; Mass Gen Laws Ann ch 266, § 49 (West 1970), enacted in 1853; Mich Comp Laws Ann § 750.116 (1968), enacted in 1846; Minn Stat Ann § 609.59 (West 1964), enacted in 1894; Miss Code Ann § 97-17-35 (1973), enacted in 1892; Mo Ann Stat § 569.180 (Vernon 1979), enacted in 1892; Nev Rev Stat § 205-080 (1979), enacted in 1911; NJ Stat Ann 2C:5-5 (1982), enacted in 1898; NY Penal Law § 140.35 (McKinney 1975), enacted in 1881; NC Gen Stat § 14-55 (1981), enacted in 1907; Okla Stat Ann tit 21, § 1437 (1983), enacted in 1890; RI Gen Laws § 11-8-7 (1981), enacted in 1896; SC Code Ann § 16-11-20 (1977), enacted in 1907; SD Codified Laws § 22-32-17 (1978), enacted in 1877; Tenn Code Ann § 39-3-408 (1982), enacted in 1858; Vt Stat Ann tit 13, § 1204 (1974), enacted in 1850; Wash Rev Code Ann § 9A.52.060 (1977), enacted in 1893; Wis Stat Ann § 943.12 (West 1982), enacted in 1893.

[2] Some states' proscriptions on possession of burglar's tools appear to be of more recent vintage. Alaska Stat § 11.61.230 (1983); Colo Rev Stat § 18-4-205 (1978); Del Code Ann tit 11, § 828 (1979); Ga Code Ann § 26-1602 (1983); Hawaii Rev Stat § 708-812 (1976); Ind Code Ann § 35-13-8-1, repealed in 1976 (applicable only to convicted felons); Kan Stat Ann § 21-3717 (1981); Ky Rev Stat § 511.050 (1985); La Rev Stat Ann § 14.95 A.(3) (West 1974); Me Rev Stat Ann tit. 17-A, § 403 (1983); Mont Code Ann § 45-6-205 (1984); Neb Rev Stat § 28-508 (1979); NH Rev Stat Ann § 635:1 V. (1974); NM Stat Ann § 30-16-5 (1981); ND Cent Code § 62-01-02 (1960), repealed in 1975; Ohio Rev Code Ann § 2923.24 (Page 1982); PA Con Stat Ann 18 § 907 (Purdon's 1983); Utah Code Ann § 76-6-205 (1978); Va Code § 18.2-94 (1982);

Before Oregon's 1971 revision of the criminal code, burglary was committed either by breaking and entering a dwelling, the most severely punished form of the crime, or by breaking and entering any structure other than a dwelling, a less serious crime. One statute punished the use of explosives to commit a crime in a building entered during the night. ORS 164.260. Use or attempted use of "nitroglycerine, dynamite, gunpowder or other high explosive" in the commission of a crime in a building after unlawful entry made one vulnerable to a 40-year sentence.[3]

As drafted by the Criminal Law Revision Commission in 1970, the less serious crime involving non-dwellings could be enhanced to a first degree offense if the actor were "armed with explosives or a deadly weapon." The inclusion of explosives was an apparent attempt to continue the old law with regard to burglary with explosives. Commentary to Proposed Oregon Criminal Code 145 (1970).

An entirely new section penalizing possession of burglar's tools appeared in this proposed draft. One who possesses any burglar's tool with intent to use it, or knowing that someone intends to use it, to facilitate a forcible entry into premises or theft could be guilty of a Class A misdemeanor.

The Commission's proposed definition of a burglar's tool was as follows:

"(2)  'Burglar tool' means explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking."

Proposed Oregon Criminal Code § 138 (1970). The definition of burglar's tools and the crime of possession derive from a

---

Wyo Stat § 6-3-304 (1983).

Texas, West Virginia, Indiana, North Dakota and Arkansas appear to be the only states without a current proscription against possession of burglar's tools.

[3] In 1969, ORS 164.260 provided in full:

"Any person who breaks and enters any building in the nighttime with intent to commit a crime therein, and in the commission of or attempt to commit such crime, uses or attempts to use nitroglycerine, dynamite, gunpowder or other high explosive, is guilty of burglary with explosives, and shall be punished upon conviction by imprisonment in the penitentiary for not more than 40 years.".

combination of the New York Revised Penal Law and the Proposed Michigan Revised Criminal Code.[4]

The Senate Criminal Law and Procedure Committee amended the Criminal Law Revision Commission's proposed first degree burglary statute to elaborate on the term "explosive." The amendment added the following list of burning and exploding devices to the first degree burglary enhancement language: "acetylene torch, or electric arc, burning bar, thermal lance, oxygen lance, or any other similar device capable of burning through steel, concrete, or any other solid substance, or nitroglycerine, dynamite, gunpowder, or any other explosive."

Witnesses before the committee testified that such an amendment was needed in order to broaden the definition to include the "safe-cracking professional * * * who uses the acetylene torch or that type of device, not to gain entry but to penetrate a secure area inside the place burglarized."[5]

---

[4] New York Revised Penal Law § 140.35 provided, and still provides:

"A person is guilty of possession of burglar's tools when he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, or offenses involving larceny by a physical taking, or offenses involving theft of services as defined in subdivisions four, five and six of section 165.15, under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character."

The Proposed Michigan Revised Criminal Code § 2615 (1967) provided:

"(1) A person commits the crime of possession of burglar's tools if he:

"(a) Possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking; and

"(b) Intends to use the thing possessed, or knows that some person intends ultimately to use the thing possessed in the commission of an offense of the nature described in subparagraph (a)."

This definition of burglar's tools was never enacted into law. Michigan maintained its old statute, in existence since 1846, which provides:

"Any person who shall knowingly have in his possession any nitroglycerine, or other explosive, thermite, engine, machine, tool or implement, device, chemical or substance, adapted and designed for cutting or burning through, forcing or breaking open any building, room, vault, safe or other depository, in order to steal therefrom any money or other property, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ the same for the purpose aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years."

[5] Minutes, Senate Criminal Law and Procedure Committee, March 2, 1971, p 10.

This same language was suggested as an amendment to the definition of burglar's tools in the possession statute in order to maintain consistency. The possession statute was accordingly amended.[6]

The result, at this point, was that the first degree burglary statute included a detailed list of burning and exploding devices and the possession statute contained this list in addition to a proscription against tools, instruments or other articles adapted, designed or commonly used for forcible entry or theft.

Both parties tell us that the printed amendment to the first degree burglary statute does not correspond to the amendment passed by the Senate Committee. Instead of including only the list of burning and exploding devices in the first degree burglary statute, the amendment incorporated by cross-reference the entire definition of burglar's tools from the possession statute. This amendment, though different from that drafted by the Senate Committee, was passed by the full Senate, the House Judiciary Committee and the full House of Representatives.

■       At oral argument, defendant took the position that though the two statutes by cross-reference contain an identical definition of burglar's tools, we should interpret the first degree burglary statute narrowly on the theory that the legislature, or at least the Senate Criminal Law and Procedure Committee, never intended to expand the first degree burglary statute beyond burning and exploding devices. It is not unusual that the same statutory language may be interpreted in different ways where warranted by legislative intent. However, defendant's position disregards the fact that the amendment was approved by both houses after it left the Senate Committee. This is ample indication that burglar's tools should be defined consistently in the two statutes.

## ANALYSIS OF STATUTORY TERMS

■       The Commentary to the possession statute provides that "[m]any different tools and articles would be included within the definition of 'burglar tool'—items such as wire

---

[6] Minutes, Senate Criminal Law and Procedure Committee, March 12, 1971, page 3.

cutters, crow-bars, picklocks, dynamite and other explosives—which could be used for a legitimate purpose." Commentary to Proposed Oregon Criminal Code 146 (1970). This makes it clear that an alternative legitimate use does not eliminate an object from the category of potential burglar's tools. However, the Commentary contains no discussion of the meaning of "adapted, designed or commonly used" for forcible entries or theft. We turn to the meaning of these terms.

No one asserts that this signpost was "designed" for committing or facilitating forcible entries. The class of objects designed for this purpose is not large. Presumably, professional locksmith tools would fall into this category.

■  The state refers to the signpost both as a "commonly used" burglar's tool and as an instrument that can be "adapted" to facilitate a forcible entry. In support of its first position, the state relies on testimony to the effect that a "pry bar" is a commonly used burglar's tool. A pry bar was defined as "[a]nything that you can pry against something else with * * *." The witness, a Lane County Deputy Sheriff, testified that it "[c]ould be anything from a tire jack handle to, as in this particular situation, a fence post." There was no testimony, however, that signposts themselves are commonly used for forcible entries. The state seeks to expand the scope of articles "commonly used" for these purposes to include articles similar to those commonly used. This stretches the statute beyond its meaning and must be rejected.[7]

■  The state also asserts that the signpost was "adapted" for use as a pry bar. The state points to the fact that defendant removed the sign from the side of the road, carried it to the barn and used it to pry the lock off. It is important to realize that an object's actual use by defendant is irrelevant to the inquiry. For purposes of first degree burglary, a burglar need only be "armed" with a burglar's tool in the course of the burglary or in flight therefrom. The statute distinguishes between being armed with explosives or a deadly weapon, ORS 164.225(1)(a), and using or attempting to use a dangerous weapon, ORS 164.225(1)(c). Had defendant not used

---

[7] The questions how and to whom the "common use" must be shown, and whether the term is sufficiently precise that a defendant can be held liable for knowing what articles are "commonly used" for forcible entries, *see* ORS 161.095(2), have not been raised, and we express no views thereon.

the signpost at all but merely had it in his possession when he was arrested at the scene of the crime, our inquiry would be the same.

■     The Court of Appeals rejected a similar argument by the state in *State v. Reid,* 36 Or App 417, 585 P2d 411 (1978), the case upon which the court relied below. In *Reid* the Court of Appeals stated:

> "If, as the state argues, any item actually used to make a forcible entry is a burglar's tool, there is little left of the crime of second degree burglary. A person would be guilty of second degree burglary only if his entry was not forcible or if he unlawfully remained on the premises or employed a naked part of his body to effect the entry. * * * [The state's interpretation] would, in essence, amend the statute to read that a burglar's tool is 'any item which has been used to effect entry.' Had the legislature intended the enhanced penalty of 15 years to apply when any item was used to effect the entry it presumably would have clearly said so." 36 Or App at 424.

If an article has been "adapted" for committing forced entries or thefts, this must be apparent from examination of the object alone, without regard to its use.

State v. Reid deserves further comment because the state has relied on *Reid* to develop its interpretation of the statutory term "adapted." At oral argument before this court the state suggested that an adapted object was anything possessing inherent qualities which rendered it capable of facilitating a forced entry. *State v. Reid* equated adaptation for a particular use with capability of use in a particular way. The court's position is best illustrated by the court's analysis of a hammer as a burglar's tool: "By way of illustration, a hammer is reasonably adapted to pounding and can be, by that characteristic, reasonably adapted to forcibly breaking through the outer limits of a building." 36 Or App at 428.

A hammer is not "adapted" to pounding. It is, in fact, designed for this purpose. When the court suggests that the hammer is "reasonably adapted to forcibly breaking through the outer limits of a building" it can mean only that a hammer is reasonably capable of such use.[8] Indeed, this was the Court

---

[8] *State v. Reid,* 36 Or App 417, 585 P2d 411 (1978), mistakenly relied on Michigan caselaw. The Michigan statute is different from Oregon's, *see* n 4, *supra.* It is not, contrary to the court's statement, the "direct progenitor of the Oregon statute." 36 Or

of Appeals interpretation in the instant case. The court stated: "We adhere to the *Reid* analysis here. To classify an item as a burglar tool on the basis that it is adapted for effecting forcible entry requires that the inherent qualities of the item render it *reasonably suitable* for effecting such entry." 67 Or App at 255. (Emphasis supplied.) This definition, however, does not square with the statutory language.

■      The statute defining a burglar's tool may be divided into two discrete sections separated by a comma. The first lists a series of burning devices by name and also includes any other "similar device *capable of* burning through steel, concrete or other solid material." ORS 164.235(2). (Emphasis supplied.) With burning devices, capability becomes an issue. The second half of the statute specifies three explosives, followed by the language: "or any other explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating a forcible entry into premises or theft by a physical taking." An instrument's capability to facilitate a forced entry or theft is not included in this operative definition.

Prior to 1975, Arkansas had a statutory proscription against possession of any "implement or other mechanical device whatsoever, adapted, designed or commonly used for breaking into" enumerated vehicles and structures. Ark Stat Ann § 41-1006 (1947). The Arkansas Supreme Court interpreted this statute to require more than that a tool may be capable of aiding a forced entry. In *Gossett v. State,* 242 Ark 593, 595, 414 SW2d 631, 632 (1967), the Supreme Court rejected the state's claim that a tire tool, two screwdrivers, a lug wrench and a bar used to remove tires from car wheels were burglar's tools, stating:

> "It is true, as shown by the testimony, that any one of the above mentioned tools could be used to pry open a door or break into a house, but so could a pocket knife. Such a showing is not sufficient for a felony conviction under the statute previously quoted. The burden was on the State to prove, beyond a reasonable doubt, that at least one of these 'tools' was designed or commonly used in committing burglary."

App at 426. The Criminal Law Revision Commission used as a model a proposed amendment to the Michigan Criminal Code which was never enacted into law.

New York cases interpreting the statute from which ours derives have examined when an article becomes adapted for a prohibited purpose. In two cases, *People v. Baer,* 96 AD2d 717, 465 NYS2d 368 (1983), and *People v. Alvarez,* 86 Misc 2d 654, 382 NYS2d 952 (NY Crim Ct 1976), the courts found that keys used to break into a residence were not burglar's tools. Both opinions reasoned that even though the keys were used to gain unlawful entry, there was no adaptation of the keys. In *People v. Gustiaburo,* 23 AD2d 891, 260 NYS2d 250 (1965) (memorandum opinion), by contrast, a cardboard box with a hinged bottom to facilitate shoplifting was found to be adapted for the commission of larceny, as proscribed by New York law. These cases illustrate that adaptation means a modification of an object's original design, which modification furthers the proscribed purpose. Adaptation is not a variation or a potential variation on an object's usual, legitimate use.

■    To summarize, neither an object's actual use nor its capability to be used in the manner proscribed by statute is relevant to the determination whether an instrument is "adapted." The object must actually be modified in some way to serve the unlawful endeavor. This interpretation comports with the legislature's intent to punish more severely the professional burglar. The legislature may have assumed that altering tools or implements in advance of a burglary reveals a greater commitment to the illicit undertaking deserving of correspondingly more severe punishment.

## APPLICATION TO THIS CASE

■    With regard to the instant case, defendant argues that the state has made no showing that signposts are commonly used burglar's tools. We agree. The state has failed to meet its burden to support this category of the statutory definition.

Defendant further asserts that the signpost was not adapted because defendant made no modification to it, such as flattening or sharpening one end, to alter it for prying. Again, defendant's analysis is correct. Adaptation can mean only that defendant altered or modified an object designed for another purpose in order to facilitate a forcible entry or theft.

Reversed and remanded for entry of judgment of

conviction of burglary in the second degree and resentencing for that crime.