Argued February 22, affirmed April 17, 1978

STATE OF OREGON, *Respondent,*
*v.*
SAMUEL THORNTON GOSS, *Appellant.*
(No. 77-153-C, CA 8747)

577 P2d 78

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Defendant appeals from his conviction of murder, ORS 163.115, following a trial to the court and assigns as error the admission of evidence that he had committed or planned to commit crimes other than that with which he was charged in this case.

Defendant admitted that in January, 1977, he killed a gas-station attendant. At trial, he relied on the defenses of extreme emotional disturbance, ORS 163.115(1)(a),[1] and mental disease or defect. ORS 161.295.[2] One psychiatrist, Dr. Fried, testified on behalf of defendant. Dr. Fried concluded that defendant suffered from paranoid schizophrenia, and that as a result he lacked the capacity to either appreciate the criminality of his behavior or to conform his conduct to the requirements of the law. Dr. Fried also concluded that at the time of the murder defendant was suffering from an extreme emotional disturbance. Dr. Gardner, also a psychiatrist, testified on rebuttal for the state. Dr. Gardner testified that while defendant did suffer from paranoid schizophrenia, he could appreciate the criminality of his conduct and was able to conform his conduct to the requirements of the law. Dr. Gardner testified that defendant was not suffering from an extreme emotional disturbance. A number of lay witnesses also testified on behalf of the state to the effect that defendant did not engage in any unusual behavior either immediately preceding or following the murder.

---

[1] ORS 163.115(1)(a) provides:

"(1) * * * [C]riminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance * * *."

[2] ORS 161.295 provides:

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

Prior to the testimony of the state's psychiatrist, Dr. Gardner, two friends of defendant had testified for the state on rebuttal. One testified that defendant had in the past smoked and sold marihuana. The other testified that on the night of the murder defendant inquired about the status of a "contract" the two had previously entered into with a third person to blow up a house for $500. Defendant made timely objections to the receipt of this evidence which were overruled without comment by the trial court.

Defendant not only admitted killing the victim, but also admitted stealing $82 from her. As the testimony set forth below indicates, Dr. Gardner weighed the theft of the money and defendant's conversation that same evening about a plan to blow up a house for $500 in determining whether defendant was suffering from an extreme emotional disturbance:

> "Q  [By the prosecutor]: * * * We've heard evidence of course that just shortly before the incident the defendant borrowed two dollars to go along with a dollar that he had from his girl friend's stepmother. And you've heard evidence, doctor, that—that I think he expressed to a friend that he needed money and that he went all the way to Eureka, California, for the purposes of finding someone to execute a contract to blow up their house because they apparently owed two grand and didn't pay it off and his sole basis for that was money. Does that give you any insight, doctor, as to whether or not you have an opinion to a reasonable medical certainty as to whether or not the defendant's motive at the service station was one of trying to go to Heaven and take the victim with him or whether or not it was one of trying to obtain some money namely in robbery?
> "* * * * *
>
> "A: It's my opinion that at the time I examined him I wasn't aware of a number of the physical facts and it would seem after becoming more aware of them by listening at the trial that his altruistic motives for killing her if at all existed were less prominent than personal gain in terms of robbery or money."

[ 510 ]

■ In *State v. Pitts,* 29 Or App 59, 562 P2d 562, 30 Or App 1, 566 P2d 182, *rev den* (1977), we noted that generally evidence that a person has engaged in certain conduct is not admissible to prove that he engaged in similar conduct at another time. The rationale for excluding such evidence was stated in *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975):

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. * * * It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice * * *.
>
> "For this reason it is the general rule in criminal cases that the state may not offer evidence that the defendant was guilty of other crimes in addition to the crime for which he is charged. Although evidence that a defendant has committed other crimes may have some probative value in that it may be 'more likely' that such a person committed the crime in question, it is generally recognized that the danger of unfair prejudice to the defendant outweighs any such probative value * * *." 271 Or at 205-06.

Several exceptions to the "other-crimes" rule have arisen out of an explicit or implicit recognition that, with certain types of "other-crimes" evidence, the relevance of the evidence outweighs the possibility that prejudice will result from the admission of the evidence. Among these exceptions are where the evidence is offered to establish motive, intent, the existence of a common scheme or plan, the lack of inadvertence or where a complete account of the crime charged is otherwise impossible. *See generally State v. Pitts, supra* at 62, and note 1.

■ Where the sole issue in a case is the mental state of a party, the question of the admissibility of "other-crimes" evidence takes on a different complexion. Almost always in such cases the mental and physical

history of the defendant will play a large role in an expert's determination of what mental state existed at the time of the crime. It is not unusual for such history to include accounts of activity, criminal in nature, in which the defendant has engaged. Professor Wigmore takes the position that when mental capacity is an issue

"* * * *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue. * * **" 2 J. Wigmore, Evidence § 228 (3d ed 1940).

While no Oregon decision has explicitly opened the door as wide as does Professor Wigmore, *State v. Harris,* 241 Or 224, 405 P2d 492 (1965), indicates that when the mental condition of a defendant is at issue, except under unusual circumstances of a nature with which we are here not concerned, the history upon which an expert relies in making a diagnosis is admissible in evidence. As the evidence that defendant planned to blow up a building for $500 was an integral part of Dr. Gardner's diagnosis, such evidence was relevant to the issue of defendant's mental state. Conversely, the possibility of prejudice from the admission of the evidence was minimal in light of the fact that defendant admitted committing the homicide.

We can see no possible relevance, however, for the evidence that the defendant had smoked and sold marihuana at some undetermined time in the past. Neither psychiatrist relied on the evidence in proffering their opinions as to defendant's mental state, and we are unable to determine what, if anything, such evidence might prove about the defendant's mental state on the night of the murder. However, the improper admission of evidence is reversible error only where the error is prejudicial to a defendant. Or Const, Amended Art VII, § 3; ORS 138.230. An error committed by the trial court is presumed to be prejudicial

unless (1) there is substantial and convincing evidence of guilt and (2) the error committed was very unlikely to have changed the result of the trial. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973). We conclude that the error here was not prejudicial. We doubt there is any reasonable possibility that the evidence concerning marihuana influenced the court's decision on the mental-disease-or-defect and extreme-emotional-disturbance issues.

Affirmed.