Argued February 22, affirmed July 18, reconsideration denied
August 16, petition for review denied October 24, 1978

STATE OF OREGON, *Respondent,*

*v.*

MICHAEL ANDREW OLDS, *Appellant.*

(No. 24646, CA 8901)

581 P2d 118

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Melinda L. Bruce, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction of murder after a jury trial. He assigns as error the admission by the trial court of evidence of other crimes he committed subsequent to the murder for which he was charged and found guilty. The denial of defendant's motion for mistrial based on admission of this evidence is also assigned as error. Defendant contends the evidence of other crimes, including kidnapping and a second murder, is so prejudicial as to have denied him his right to a fair trial.

The murder victim, Steven Schmerer, was a young cab driver in Walla Walla, Washington, who was dispatched to pick up a passenger at approximately 2:00 a.m. on April 3, 1977, and to take the fare to Pendleton, Oregon. Schmerer was found shot to death in his cab in a field outside of Pendleton on April 5, 1977. Defendant admitted to police officers that he had called a cab in Walla Walla and had taken it to Pendleton on April 3. Defendant had purchased a hand gun in the early morning hours of April 3, 1977. The bullet removed from the victim was found to have been fired from the weapon defendant purchased and which was seized from him upon his arrest in Pennsylvania on April 11.

Defendant told police officers he had hidden in a shed near the scene of the murder between April 3rd and April 5th, fearing apprehension by police investigating in the area of the crime. He discarded a black bag in a culvert in the area and told the officers, in effect, that one in the sort of trouble he was in finds it necessary to travel quickly and lightly. Defendant accurately described to an officer of the State Police the location of a shed in the area where he had hidden in relation to where the taxi cab was found. Although defendant never explicitly admitted killing Schmerer, he told a patron of a Pennsylvania restaurant where he was arrested that he had killed a cab driver when the driver gave him more resistance than he wanted.

■ We dealt with the question of admissibility of "other crime" evidence in detail in *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* (1977), *cert den* 434 US 1049 (1978). In *Hockings* our analysis focused on (1) whether the proffered evidence is relevant, and if so (2) whether, despite its relevance, it should be excluded because its probative value is outweighed, in the balance, by its prejudicial impact. The state must establish that the evidence will tend to prove some inference or fact other than the defendant is a "bad person" who has been involved in other criminal activities so it is probable he committed the crime for which he is on trial as well. The obvious danger inherent in such other crimes evidence is that the jurors' thoughts will be distracted from their primary consideration of determining the defendant's guilt or innocence of the crime for which he is on trial.

Defendant objected at trial to evidence concerning some of his activities after he left the shed near the murder scene on April 5.[1] Marion Riley and his wife Bernice testified that defendant held them in their home at gunpoint on the night of April 5 until the morning of the 6th. Defendant told the couple he had killed once and he could do it again. Mr. Riley testified he was abducted by defendant and forced to drive to various towns in Oregon before stopping in Ione at the residence of Mary Lindsay. She also became a hostage and was forced at gunpoint to drive defendant and Riley in her vehicle. Riley testified that after driving for some distance in Oregon the defendant decided to free Mrs. Lindsay. Defendant led her away from the

---

[1] Although the record is less than clear, it appears that no timely objection was made to Bernice Riley's testimony concerning defendant's holding the couple at gunpoint. Defense counsel did not object to Mr. Riley's testimony concerning his abduction by defendant until Riley began to speak of the killing of Mary Lindsay. As a result, the question of the admissibility of testimony prior to timely objection by defense counsel is not before us. *See State v. Sterling,* 22 Or App 52, 537 P2d 578, *rev den* (1975). However, defendant did object at the start of trial to the presence of a chart used by the district attorney which indicated the other crimes allegedly committed by defendant, including those testified to by the Rileys and not specifically objected to by defendant.

[ 308 ]

car where Riley heard a shot and saw Mrs. Lindsay "drop." Riley then testified to yet another abduction of a Mrs. Davis from Idaho.

The state argues the evidence of assaults, kidnappings and homicide was relevant in establishing intent, flight, consciousness of guilt, and identity. As to the latter, the state argues that since there were no witnesses to the killing of the cab driver, it was important to prove defendant fired the gun that killed Mrs. Lindsay since the same weapon was used to kill Schmerer. By establishing that the weapon defendant used to kill Mrs. Lindsay was also the instrument which took the life of the cab driver, the jury would be more inclined to believe defendant was in fact the person who used the gun to kill Schmerer. In this respect the state contends the evidence is relevant and probative on the issue of defendant's identity.

The Supreme Court in *State v. Manrique*, 271 Or 201, 531 P2d 239 (1975), considered the scope of the identity exception. The Court indicated the exception allowing evidence of other crimes to prove identity is

"* * * limited to cases in which the crime on trial was committed 'by the use of a novel means or in a particular manner,' so as to provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which he is being tried." (Citations omitted). 271 Or at 207.

Aside from the fact that the bullets used in both homicides were fired from the same gun, there was no similarity between these two murders. Nor were the crimes committed by a "novel means" or in any "particular manner" as the exception requires. As the Court indicated in *Manrique*, " 'a need to prove identity is not ordinarily of itself a ticket of admission.' " 271 Or at 208. *See also State v. Hockings, supra.*

In this case expert testimony established that the gun defendant purchased and which was seized from him when he was arrested was used to kill Schmerer. Riley's testimony that he witnessed defendant kill

[ 309 ]

Lindsay was unnecessary to establish that defendant's gun was also the instrumentality of Schmerer's death. This testimony added strength to the inference that it was not only defendant's gun that took the lives of the two victims, but that it was by defendant's own hand. However, this inference arises in large part from the proposition that if defendant killed once, it is more likely that he is a person of generally bad character who could kill again. The use of evidence of other crimes for this purpose is improper. The testimony of Riley that defendant shot Lindsay was unnecessary to proving the state's case against the defendant for the killing of Schmerer. The offer of this evidence by the prosecution amounted to "overkill" and it was error on the part of the trial court to have admitted it.

It was also erroneous for the trial court to have admitted evidence of the abductions of Lindsay and Davis. Although this evidence was relevant to flight, the prejudicial impact involved in establishing this fact by proof of the kidnappings outweighs its probative value. Once it is determined that evidence of other crimes is relevant to some fact or inference other than establishing the defendant's bad character, it is necessary to balance its probative value with its prejudicial tendencies.

In *State v. Hockings, supra,* we quoted the following as being important to this inquiry:

> " ' "* * *[T]he actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, * * * the degree to which the jury will probably be roused by the evidence to overmastering hostility." McCormick, Evidence 326, 332, § 157 (1954).' *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971); *State v. Williams,* [16 Or App 361, 518 P2d 1049, *rev den* (1974)]." 29 Or App at 147-48.

The probative value of the abduction evidence to prove flight is diminished by the fact the prosecution had established that defendant was ultimately captured on April 11, 1977, in Pennsylvania. The jury also heard evidence that defendant hid near the murder scene in a shed for three days in order to avoid apprehension by police officers investigating in the area. Under these circumstances the inference that defendant was fleeing from a crime was not significantly aided by proving his various acts of kidnapping along the way.

The state argues it

"* * * necessarily had to rely on evidence of conduct before and after the crime as circumstantial evidence that defendant was not suffering from a mental disease or defect at the time of the cab driver's murder * * *."

Defendant, in addition to his plea of not guilty, filed a notice of intent to rely on evidence of mental disease or defect, ORS 161.309. He presented no evidence at trial. The only expert who testified regarding defendant's mental condition was a psychiatrist who testified for the state. In response to a hypothetical question the psychiatrist stated, in his opinion, the defendant was not suffering from a mental disease or defect. The hypothetical question posed by the prosecutor included the facts leading up to and surrounding the homicide for which defendant was on trial. There was no mention in the hypothetical question or in any other question propounded to the psychiatrist concerning the activities defendant was involved in after he left his hiding place near where the body of the cab driver was found. There is no indication in the record that the doctor utilized the facts of the assaults, kidnapping and murder of Mrs. Lindsay in formulating his conclusion. The facts of these subsequent crimes were not put in issue by defendant's cross-examination of the expert.

We approached a similar problem of admissibility of other crimes evidence in *State v. Goss,* 33 Or App

507, 577 P2d 78 (1978). We noted that other crimes evidence is generally not admissible but observed:

> "Where the sole issue in a case is the mental state of a party, the question of the admissibility of 'other-crimes' evidence takes on a different complexion. Almost always in such cases the mental and physical history of the defendant will play a large role in the expert's determination of what mental state existed at the time of the crime. * * *" 33 Or App at 511-12.

After quoting a rather extreme position posed by Professor Wigmore, 2 J. Wigmore, Evidence § 228 (3rd ed 1940), to the effect that when mental capacity is in issue "any and all conduct of the person is admissible in evidence," we declined to open the door as wide as the professor proposed. We concluded the history upon which an expert bases his opinion is admissible even if it includes evidence of other criminal activity and noted the prejudicial impact was minimal in light of the fact defendant admitted the killing.

There are many material distinctions between the case here at issue and *State v. Goss, supra.* Here there was an issue of whether defendant had committed the homicide. Although he had given notice of the defense of mental disease or defect he presented no evidence respecting this defense. Thus, the sole issue was not his mental condition. The psychiatrist who testified for the state did not base his opinion on the challenged evidence. He was able to arrive at his opinion and explain his conclusion without reference to the other crimes.

■ Even if we accept Professor Wigmore's comprehensive ground for admission we must still determine if the probative value of the evidence is outweighed by its prejudice to defendant. The state did not need to prove the other crimes in order to meet the defense respecting defendant's mental condition. There was substantial evidence of defendant's voluntary conduct apart from his other crimes from which the expert and the jury could conclude he had the requisite mental

capacity to be held responsible for the homicide. The relevance based on necessity was thus minimal. We conclude the probative value was substantially outweighed and the evidence should not have been admitted.

■ Upon concluding that the other crimes evidence should not have been admitted, we must determine whether the error was harmless and the conviction can be upheld despite the error. Or Const, Art VII, § 3. The evidence of defendant's guilt, some of which we have set forth in this opinion, was overwhelming. We conclude the results of the trial would have been the same absent the challenged evidence.

Affirmed.

**SCHWAB, C. J.,** specially concurring.

I concur in the majority opinion, but wish to add that arguably, at least, the evidence of the other crimes committed by defendant subsequent to the murder of Steven Schmerer was admissible.

In order to obtain a conviction the state must prove its case beyond a reasonable doubt. In this case, as in most murder cases, the state had to rely for the most part on circumstantial evidence. As a necessary element of proof the state had to show not only what gun was used to kill Steven Schmerer, but that the defendant pulled the trigger.

It is true that the fact that defendant had possession of the gun a few hours before the murder and was found in possession of it eight days later is strong evidence that he had it in his possession at the time of the murder—but it is not conclusive evidence. Proof that the defendant had it in his possession when he killed Mrs. Lindsay three days after the death of Schmerer is even stronger evidence that it was he who killed Schmerer.

The relevance of defendant's statement that "he had killed once" to the Rileys on April 5 is self-evident. If the statement was admissible, the state was entitled to show the circumstances in which it was made. If evidence of the killing of Mrs. Lindsay by defendant was admissible, then evidence of the kidnapping of Mrs. Lindsay which preceded the killing was admissible to show how defendant came in contact with her.