Argued May 24, affirmed July 30, 1979

STATE OF OREGON,
*Respondent,*
*v.*
ROBERT ALLAN SHOEMAKER,
*Appellant.*

(No. 78-322-C, CA 12967,
No. 78-323-C, CA 12968,
No. 78-478-C, CA 12969)
(Cases Consolidated.)

597 P2d 1305

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and *Tanzer, Richardson and Roberts, Judges.

ROBERTS, J.

---

*Tanzer, J., not participating.

## ROBERTS, J.

Defendant appeals from his convictions for murder, attempted murder and burglary, citing as error the trial court's denial of a defense motion to suppress certain statements made by the defendant while in custody. We affirm.

In February of 1978, defendant was jailed on a forgery charge and counsel was appointed to represent him in connection with those charges. In mid February, defendant was placed in a single cell which was not in the general population area of the jail. Defendant was able to communicate with the person in the next cell and retained visiting, library and shower privileges. An officer testified that this was customary police procedure in a case like this; defendant had been involved in a number of burglaries and information had come to light possibly implicating him in a murder. He was placed in the single cell so that police could note with whom he had conversations and to prevent him from getting messages to the outside arranging to have items disposed of.

About the time defendant was placed in the single cell, police officers obtained information implicating him in a murder then under investigation. Although a Sergeant Cain had apparently established some rapport with defendant while investigating the forgeries, he decided, after conferring with a superior, that he should not approach defendant about the murder because defendant had an attorney.

However, Cain and two other officers spoke with defendant's brother and asked for his assistance in obtaining cooperation from defendant. The brother visited defendant and told him it would probably help him in the long run if he told the truth. According to the brother, defendant made no response one way or the other.

Defendant's attorney learned that defendant was being investigated on the murder charge, but defendant did not ask him to represent him as to that charge, nor did the attorney request to be appointed. The attorney did advise defendant to remain silent.

About a week after the brother's visit, defendant told his mother he wished to talk to Cain. Cain came to his cell and said he would read him his rights. Defendant said "no," saying he just wanted to explain certain incriminating evidence. He said his attorney had told him not to talk but that he wanted to explain the evidence. He told an exculpatory story and stated that he wanted to help out with the investigation and would talk with Cain again the next morning.

Cain returned the next morning and read defendant his *Miranda* rights.[1] Defendant responded that he understood his rights and wanted to talk. Cain then told defendant about an accomplice's statement that implicated defendant. In response to a question, defendant described the murder weapon and, after listening to part of a tape of his accomplice's statement, he gave Cain a statement. He was again advised of his rights and made a taped statement. The tape and a transcript of the tape were introduced at his trial.

Defendant urges adoption of a *per se* rule excluding all statements made by a defendant who is represented by counsel unless counsel is present when the waiver of rights is made. We rejected such a *per se* rule in *State v. Attebery*, 39 Or App 141, 591 P2d 409 *rev den* (1979), stating "the fact that a defendant has counsel will not in itself prevent his giving voluntary statement without counsel being notified or present." 39 Or App at 145.

As in *Attebery*, we look to see if there was a voluntary waiver of the rights to counsel and to remain silent.

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

■ ■ Where the defendant has been read his rights, "voluntariness then becomes a question of fact." *State v. Atherton,* 242 Or 621, 627, 410 P2d 208 (1966). In deciding voluntariness, the "totality of the circumstances" evident from the record is to be examined. *State v. Pressel,* 2 Or App 477, 479, 468 P2d 915, *rev den* (1970). In this case the defendant had asked to speak to Cain and had been read his rights and claimed to understand them at the time he made his self-incriminating statements. Defendant argues that his assignment to a single cell amounted to a coercive police tactic. However, in light of the fact that he still had access to other persons and parts of the prison, we are not convinced that the isolation was coercive in nature.

Defendant further points to the visit by his brother as an incident of police coercion. In *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), the United States Supreme Court stated that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." 384 US at 475-76. While the brother's visit in his case was obviously an indirect attempt by the police to influence defendant to talk, we find no indication that the brother's visit, a full week prior to defendant's decision to talk, had any influence on the defendant. Nor is there evidence that defendant was particularly susceptible to his brother's influence as was the case in *State v. McGrew,* 38 Or App 493, 590 P2d 755, *rev den* (1979), where the defendant had a mental age of 12 to 14, suffered from alcoholism, and agreed to speak immediately after the police-inspired exhortations of his companion that he ought to "come clean."

We hold that the motion to suppress was properly denied.

Affirmed.