Argued and submitted March 30, judgment affirmed;
sentence modified August 3, 1981

STATE OF OREGON,
*Respondent,*

*v.*

CLIFFORD WILLIAM STEIN,
*Appellant.*

(No. 80-1057, CA 19005)

632 P2d 8

J. Marvin Kuhn, Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief was
Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from his conviction after jury trial of the crime of murder for having caused the death of his child.

Defendant makes two assignments of error:

1) allowing Dr. Cochran to testify to the meaning of the term "inappropriate referral," and in permitting him to testify to the comparison of the number of 'not guilty by reason of insanity' commitments between the states of New York and Oregon; and

2) sentencing defendant to life imprisonment with a minimum term of 25 years imprisonment.

The indictment charged that defendant had caused the death of the child by "* * * withholding food and liquids from him, striking him, and isolating him, during the last month of his life * * *."

Defendant pleaded not guilty by reason of mental disease or defect. A substantial portion of the testimony on both sides was directed to this issue. Two psychiatrists testified for the prosecution and one for the defense. In addition, the State offered the testimony of John B. Cochran, a clinical psychologist, in rebuttal.[1] In the course of his testimony, Dr. Cochran, in response to a question from the prosecution, defined the term "inappropriate referral" as follows:

"Q. What is 'inappropriate referral'?

"A. Well, the way we use it at the Forensic Psychiatric Services, it's a referral that we get —it's often court stipulated — where someone, some psychiatrist or psychologist, said this person is suffering from a severe mental disease or defect to the extent that he could not be responsible for his actions. Then he's evaluated on the wards by myself and other psychiatrists that are there and seen day in and day out over a period of time. When he doesn't exhibit these sorts of symptoms, then we go ahead and call them an 'inappropriate referral,' and he will go ahead and be dismissed, discharged from the hospital."

Also, Dr. Cochran testified further as follows:

---

[1] The State also called Dr. James C. Hague, a psychiatrist, initially requested by the defense to examine defendant, as a rebuttal witness.

"Q. Can it occur and, indeed, does it not often occur, that an intelligent person who has committed a crime can fake symptoms of mental illness so that he gets sent to the Oregon State Hospital instead of the penitentiary?

"MR. PETERSON: Objection, Your Honor.

"THE COURT: Overruled.

"A. Certainly it happens. The state of Oregon right now is running close to a hundred and fifty N.G.I. commitments per year. We compare this with the state of New York between the years 1971 and 1976 and they averaged less than fifty.

"MR. PETERSON: Could I have a continuing objection to this entire line, Your Honor?

"THE COURT: You may.

"Q. Go ahead. Have you completed your answer?

"A. No, no, I wasn't through with it. The state of New York has a population of over eighteen million. It is seven-and-a-half times the state population of Oregon. If you look at it in terms of how many referrals we would be having, it was not proportionate to New York and other states. We have been averaging roughly nine to ten per year. We are fifteen times over that right now."

From our examination of the entire record including the excerpts from Dr. Cochran's testimony set forth above, we conclude that there was no reversible error. First defendant did not make a timely and sufficient objection to Dr. Cochran's testimony defining the term "inappropriate referral." *State v. Walgraeve,* 243 Or 328, 329, 412 P2d 23, 413 P2d 609 (1966). Second, as to that portion of Dr. Cochran's testimony comparing the number of not guilty by reason of insanity commitments, while we believe that this testimony was immaterial and therefore improper, in the full context of his testimony and the testimony of the other experts we do not feel that the same constitutes reversible error. Applying the rule laid down in *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), in the case at bar 1) there was substantial and convincing evidence of guilt, as well as mental capacity, and 2) the error committed was unlikely to have changed the result of the trial. *Accord: State v. Olds,* 35 Or App 305, 581 P2d 118, *rev den* (1978).

Finally, we consider defendant's objection to the sentence.

■    In *State v. Shumway,* 291 Or 153, 630 P2d 796, (1981), Our Supreme Court held that under ORS 163.115(5),[2] the same statutory provision involved here, requiring the defendant to serve not less than 25 years before becoming eligible for parole violates Art I § 16[3] of the Oregon Constitution and cannot be applied. However, the Court held that the conviction and sentence to the Corrections Division for the rest of defendant's natural life was proper. Accordingly we modify the sentence in the case at bar in the same way.

Judgment affirmed; sentence modified.

---

[2] ORS 163.115(5) provides:

"Except when a sentence of death is imposed pursuant to ORS 163.116, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole"

[3] Article 1 § 16 of the Oregon Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense.—In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."