Argued and submitted February 19, reversed
and remanded May 26, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# ARTHUR ZAMUDIO,
*Appellant.*

## (No. 81-556-C, CA A21783)

645 P2d 593

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, James E. Mountain, Jr., Deputy Solicitor General, and Barbara A. Jacobson, Certified Law Student, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Defendant appeals his convictions after a jury trial for rape in the first degree (ORS 163.375), sodomy in the first degree (ORS 163.405) and sexual abuse in the first degree (ORS 163.425). He contends that the admission in evidence of prior criminal acts was prejudicial error. The evidence objected to was that defendant had beaten his wife about one month before the alleged sexual assault of the victim in the present action. We agree and reverse.

The evidence revealed the following scenario. The victim's marriage had recently been dissolved. She testified that her husband had beaten her and tried to kill her. As a result she was emotionally distraught and was unable to "deal with men at all." On the day of the sexual assault that gave rise to this action, she was visiting with women friends at their home. She arrived there around noon and planned to stay the night. Her friends had suggested that an evening out might be therapeutic. During the afternoon four individuals, including defendant, arrived at the home. A party ensued, and the afternoon was spent drinking beer, smoking marijuana and listening to music.

Around 6 or 7 p.m. a woman named Mary came to the house. Defendant asked her to purchase some drugs, and she agreed. Defendant gave her $65 in food stamps and warned her to return with the drugs. Defendant was asked to leave, because the women planned to go out for the evening. Defendant refused, stating that he was waiting for Mary to return with the drugs and that there would be "hell to pay" if she did not.

The victim decided not to go out for the evening, and her two friends left without her. This left the victim at the house alone with defendant. Several times during the evening the victim asked defendant not to move quickly around or toward her, because she was "real nervous about men." Sometime later defendant decided to leave the house. The victim fell asleep in the living room. Around 2:00 a.m. she was awakened by a police vehicle that stopped at the house and dropped defendant off. Defendant entered the house and complained that he had been thrown out of a bar.

Defendant asked if Mary had returned, and the victim said she had not. The victim testified that defendant said that if he got ripped off, somebody was going to pay for it. The victim testified she tried to avoid defendant but that he followed her from room to room. The victim claimed she became "half-way hysterical." She went into the bathroom, and defendant followed her. She began to yell, and defendant slapped her and hit her with his belt. She tried to climb out the window over the bathtub, but defendant grabbed her by the hair and pulled her back. He demanded that she commit an act of oral sodomy. When she refused, he hit her several times and forced her to sodomize him. He then had sexual intercourse with her. Then, defendant went into the kitchen, came back with a carrot and told the victim to lie down on the couch. When she refused, he hit her and inserted the carrot in her rectum.

A vehicle pulled up in front of the house, and the victim ran out of the house and entered the vehicle which was occupied by her friends. Reserve officers on patrol saw the victim run from the house naked. They radioed for a regular police unit. Meanwhile, the victim and her friends drove to a pay phone and called the police. The officer who responded to the radio request observed defendant standing in the doorway of the house, buttoning the top buttons of his shirt. Defendant began to walk away from the house. When the officer asked him to stop, defendant continued walking. The officer attempted to interview the victim but that was unsuccessful, because she was hysterical. At the hospital emergency room, the doctor was unable to make a complete physical examination because of her hysterical condition. The doctor did not observe anything indicative of trauma around the vaginal or rectal areas.

Defendant was arrested that morning around 6 a.m. about a mile from the house. He denied touching or threatening the victim. Defendant claims that when he was dropped off at the house by the police, he was drunk and immediately went to sleep. When he awoke, he found the victim injecting narcotics. He accused her of stealing his drugs. Defendant testified that she offered to engage in sexual acts in return for "whatever I might think she had done." She took off her clothes, but defendant decided not

to have any sexual contact with her. Defendant testified that he went into the bathroom and when he returned the victim had his wallet. Defendant went for his wallet, and the victim ran out the door.

The evidence objected to by defendant was admitted during the state's case in chief and the direct examination of the victim. The victim had met defendant's wife about a month earlier and had learned that defendant had beaten and injured his wife. The victim described the wife's injuries:

> "The whole side of her face, down her cheek, and everything was all black. Her eye was all out and black and real bad. She couldn't even pick her baby up."

She further testified that defendant's wife had told her that "he'd [defendant] just got real intense * * * and went crazy on her."

The trial court found the evidence relevant as probative of the victim's state of mind and not for the truth of the matters asserted.[1] Essentially, defendant argues: the evidence that defendant beat his wife was not relevant to the crimes charged in the indictment; the evidence was of specific bad acts which could constitute the crime of assault; and, even if the evidence were relevant to some issue, it should have been excluded because of its prejudicial effect.

■■ The evidence regarding defendant's alleged beating of his wife is evidence of the crime of assault. *See State v. Madison,* 290 Or 573, 580, 624 P2d 599 (1981). In order for evidence of prior crimes to be admissible, it must be relevant to some fact or inference that the state is entitled to prove, *i.e.,* a fact or inference other than defendant's bad character or propensity to commit crime. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Olds,* 35 Or App 305, 310, 581 P2d 118, *rev den* 284 Or 80a (1978); *State v. Hockings,* 29 Or App 139, 145, 562 P2d 587, *cert den* 434 US 1049 (1977). Once relevancy has been determined, the

---

[1] The state agreed that the jury could be instructed to consider the evidence only on the issue of the victim's state of mind and that the evidence could not be considered as proof that defendant beat his wife, but no such instruction was requested or given.

probative value of the evidence must be weighed against its prejudicial impact. *State v. Hockings, supra.*

■ In order for a defendant to be convicted of rape, sodomy and sexual abuse, all in the first degree, the state must prove forcible compulsion. ORS 163.305 defines "forcible compulsion" as

"\* \* \* physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

The state argues that because the victim's "earnest resistance" was at issue, her state of mind regarding defendant's propensity for physical violence was relevant to her reaction to him. Because forcible compulsion is an element of the state's case, the victim's knowledge of defendant and the violence she thought him capable of may have some, albeit slight, relevance.

■ The next inquiry is whether the probative value of the evidence is outweighed by the countervailing danger of prejudice toward defendant. As we stated in *State v. Hockings, supra,* this determination cannot be made in a vacuum, but must be determined in the context of the trial. The following factors have been offered as the framework for the analysis:

" '\* \* \* [t]he actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, \* \* \* the degree to which the jury will probably be roused by the evidence to overmastering hostility.' McCormick, Evidence 326, 332, § 157 (1954). *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971)." *State v. Williams,* 16 Or App 361, 518 P2d 1049, *rev den* (1974).

In the present case, we find that the need for the prior crime evidence was negligible. Although the state had the burden of proving forcible compulsion, consent was not an issue here. Defendant did not maintain that the sexual acts occurred but that the victim was willing. Instead, defendant attempted to persuade the jury that he had not

touched or threatened the victim in any way. In light of the evidence concerning the victim's timidity toward men as a whole, the need for other crimes evidence is further diminished. The state presented ample evidence of the emotional trauma experienced by the victim when she interacted with men. She testified that she communicated her "flinchiness" to defendant. Moreover, witnesses corroborated the victim's account of the struggle by testifying that the house was a "total mess," a "wreck," with ashtrays on the floor, the bathroom shower curtain down and the screen broken out of the bathroom window. In view of this, the need to present additional evidence of the victim's state of mind in order to show that she did not resist as earnestly as other victims, was slight.

The "convincingness" of evidence that defendant actually beat his wife is not as easily ascertained. Although the evidence was clearly hearsay, the jury could have been persuaded by it that defendant did assault his wife.

■       The degree to which the evidence of the prior crime roused the jury to "overmastering hostility" toward defendant might have been substantial. The victim graphically portrayed the injuries inflicted on defendant's wife. The state stressed the debilitating nature of those injuries. Moreover, we believe the public stigma attached to a husband who beats his wife is significant. The inflammatory nature of such a characterization is arguably more substantial than the purchase of marijuana discussed in *State v. Hockings, supra.* It is probable that portrayal of defendant as a "wife-beater" so blackened his character in the mind of the jury, that it was natural to infer that he was readily capable of rape, sodomy and sexual abuse. In short, we find that the slight probative value of the evidence was outweighed by its inflammatory and prejudicial impact.

The state argues that if we find the admission of the prior crime evidence was error, we should nonetheless find the error harmless. We disagree. In *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), the two requirements for affirmance despite error were reiterated:

"1)   that there was substantial and convincing evidence of guilt; and

"2)   that the error committed was very unlikely to have changed the result of the trial." 260 Or at 256.

As in most sexual assault cases, there were no witnesses to the alleged incident except the victim and defendant. Although there were witnesses who corroborated some of the victim's testimony, there was no medical or forensic evidence of a sexual assault. Credibility was a crucial factor. The admission of evidence that defendant violently beat his wife portrayed defendant as mean and vicious and diminished defendant's ability to receive a fair trial. We cannot say the error was harmless.

Reversed and remanded for a new trial.