Argued and submitted April 24, 1985, reversed and remanded for new trial February 26, reconsideration denied May 9, petition for review denied June 17, 1986

(301 Or 241)

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY ARNOLD WALL,
*Appellant.*

(143,693 CA A31714)

715 P2d 96

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction for murder and makes three assignments of error: the admission of evidence elicited by the state concerning the disposition of persons found not guilty by reason of mental disease or defect; the admission of evidence of defendant's other crimes and bad acts; and the denial of his motion to suppress his statements that he wanted to consult an attorney before talking or being photographed. We agree with defendant on the first assignment and reverse and remand for a new trial.

That defendant killed the victim was not disputed at trial. The entire case was focused on his mental condition at the time of the killing. His first assignment is based on this exchange between the prosecutor and defendant's witness Dr. Parvaresh, a psychiatrist who testified over objection on cross-examination:

"[PROSECUTOR]:   Doctor, you're aware that a person must have an active mental illness to be confined, if he's been found not responsible?

"[DEFENSE COUNSEL]:   Your Honor, I object again. I think it's clearly irrelevant. I assume I have a record.

"[THE COURT]:   You have a standing objection.

"[PROSECUTOR]:   Doctor, you're aware that the state of Oregon must prove after a finding of not responsible because of mental disease or defect that there is an active mental illness in operation to be able to confine a person, are you not?

"[DR. PARVARESH]:   Yes.

"[PROSECUTOR]:   Consequently, if there is no active mental illness, a defendant is able to petition for release, is he not?

"[DR. PARVARESH]:   If there's no active mental illness, yes, I understand he can do that.

"[PROSECUTOR]:   And are you aware that this Defendant has been informed of that right?

"[DR. PARVARESH]:   I do not know that.

"[PROSECUTOR]:   That would be a motive to want to have a proper mental disease or defect defense, would it not?

"[DR. PARVARESH]:   If a person really is quite familiar

with the law, with the medicine, I can imagine, yes, that would be a motive."

Defendant's specific claim of error is that the disposition of a person found not guilty by reason of mental disease or defect is not to be considered by the jury. He argues that the information elicited in the cross-examination of his psychiatrist witness could have influenced the jury to find him guilty in order to avoid his early release back into society, thereby depriving him of a fair trial.

The state has a duty to see that a criminal defendant has a fair trial. *State v. Pointer, et al.,* 106 Or 589, 213 P 621 (1923); *State v. Seeger,* 4 Or App 336, 338, 479 P2d 240 (1971). That line of questioning by the state was improper, and admission of the answers constituted prejudicial error.

■     Although this precise issue is one of first impression in Oregon,[1] the rule is firmly established that whether the defendant will be confined in a mental institution is not ordinarily a matter for the jury's consideration. *State v. Daley,* 54 Or 514, 522, 103 P 502, 104 P 1 (1909). Thus, for example, it is proper for the court to refuse a defendant's request to charge the jury regarding the disposition of the defendant in the

---

[1] The issue has been considered in other states. *See* cases collected in Annot., 44 ALR2d 978 (1955), and in 44-48 ALR2d Later Case Service 52 (1980), including Supp 16-17 (1985). An overwhelming majority of states finds improper any inquiry or comment by the prosecutor as to the disposition of the defendant after a verdict of not guilty by reason of mental disease or defect. *See, e.g., Jetton v. State,* 435 So 2d 167 (Ala Cr App 1983); *Johnson v. State,* 408 So 2d 813 (Fla App 1982); *State v. Myers,* 159 W Va 353, 222 SE2d 300 (1976). However, under the facts of the particular case, some courts have found that the remarks constituted nonprejudicial error. *See, e.g., People v. Blake,* 58 Mich App 685, 228 NW2d 519 (1975) (comments made in response to a discussion of disposition of defendant by defense counsel); *State v. Gosser,* 50 NJ 438, 236 A2d 377 (1967), *cert den* 390 US 1035 (1968) (objection by defense counsel sustained and jury instructed to disregard the statement and to decide the issue on the law); *State v. Estes,* 655 SW2d 179 (Tenn Cr App 1983), (conduct minor in light of the facts and circumstances of the case; jury properly instructed during the charge.)

The Ninth Circuit has addressed the issue on several occasions. In *Evalt v. United States,* 359 F2d 534 (9th Cir 1966), and *United States v. Birrell,* 421 F2d 665 (9th Cir 1970), the prosecutor's comments invited the jury to convict even though it might believe that the appellant was insane. Both convictions were reversed. In *United States v. Greiser,* 502 F2d 1295, 1297 (9th Cir 1974), the prosecutor asked a witness if he was aware "of the limitations of the federal court on institutionalization of mentally affected individuals." Defense counsel objected immediately, and the objection was sustained. After a motion for mistrial, the court instructed the jury to disregard the question. Although the Court of Appeals deemed the conduct of the prosecutor improper, it held the exchange sufficiently nonprejudicial to be harmless error.

event of a verdict of not guilty by reason of mental disease or defect. *See State v. Segner,* 42 Or App 397, 600 P2d 916, *rev den* 288 Or 253 (1979).

The dispositive question in a case of prosecutorial misconduct is whether the defendant was prejudiced by the conduct or remarks, *i.e.,* whether the jury was likely to be influenced by them. *State v. Seeger, supra,* 4 Or App at 338. The inquiry in this case, suggesting that the state could not keep defendant confined if he were found not guilty by reason of mental disease or defect, was very likely to have influenced the jury. It encouraged the jury to make its determination on impermissible grounds by injecting into its deliberations a factor which was beyond the scope of its inquiry. It placed before the jury the spectre that, if it found defendant not guilty by reason of mental disease or defect, he would be back in society very soon, perhaps to kill again. It appealed to the fears of the jurors and tended to persuade them to convict rather than risk that defendant would soon be released. The likelihood that the jury was influenced is increased when, as here, no curative instruction was given at the time the inadmissible evidence was introduced.

The jury was instructed at the end of the trial: "You must not consider what sentence might be imposed upon the defendant." That instruction was too little, too late. It did not tell the jury that it was not to consider the disposition of defendant if he was found not guilty by reason of mental disease or defect. It was insufficient to dissipate the prejudice.

Although we conclude that the evidence should not have been admitted, we will uphold the conviction if the error was harmless. Or Const, Art VII (amended), § 3; *State v. Olds,* 35 Or App 305, 313, 581 P2d 118, *rev den* 284 Or 80a (1978). Although there was substantial and convincing evidence that defendant had committed the homicide, there was also evidence of mental disease or defect, and we cannot conclude that the error committed was very unlikely to have changed the result of the trial. Therefore, we cannot conclude that it was harmless, and we reverse. *State v. Mains,* 295 Or 640, 663, 669 P2d 1112 (1983).

The state argues that the testimony was properly admitted for its bearing on the question of whether defendant's alleged mental illness was real or feigned. We reject

that as an impermissible rationalization of the state's attempt to bring in improper evidence. Virtually any time when the state challenges a defendant's claim of mental disease or defect, it is impliedly asserting that the mental disease or defect is being feigned and did not exist at the time of the crime. The state should not be permitted to place prejudicial and irrelevant evidence of the possible disposition of a defendant before the jury under such a rationale.

■ The state also argues that the evidence is admissible when the defendant first "opens the door." The basis for that argument is a response of Parvaresh to a question during cross-examination in which the prosecution suggested the possibility that defendant was faking and lying to the doctor with respect to his symptoms. One of the doctor's comments in a lengthy response was: "Just the fact that you are found not guilty because you are mentally ill doesn't mean that you are let go, so that he knows [it] is not going to do him much good." In support of the argument, the state cites *State v. Barger,* 43 Or App 659, 664, 603 P2d 1240 (1979); *State v. Attebery,* 39 Or App 141, 146-47, 591 P2d 409, *rev den* 286 Or 449 (1979); and *State v. Rowley,* 6 Or App 13, 17-19, 485 P2d 1120, *rev den* (1971). The cases cited are inapposite. In each, the defense had elicited some testimony that was later commented on, examined in greater depth or refuted by other evidence by the prosecution. To the contrary, in this case, the evidence that allegedly opened the door was elicited by the prosecutor himself on cross-examination. In this situation, defendant cannot be said to have "opened the door."

■ Defendant's second assignment is that the trial court erred in allowing the state to introduce evidence of other crimes and bad acts committed by defendant. We have permitted evidence of prior crimes and bad acts to show the history on which an expert relies in making a diagnosis regarding a defendant's sanity. *State v. Larsen,* 44 Or App 643, 649, 606 P2d 1159, *rev den* 289 Or 373 (1980); *State v. Goss,* 33 Or App 507, 511, 577 P2d 78 (1978). This case is not distinguishable in any meaningful way from *Larsen,* and we hold that admission of the evidence was not error.

Defendant's last assignment is that the court erred in denying his motion to suppress statements that he did not want to talk to the police or be photographed until he had

spoken to an attorney. In Oregon, the rule has been that the state, when rebutting a defense based on mental disease or defect, may present evidence of the defendant's mental or emotional condition near the time the crime was committed, even though the evidence may be otherwise inadmissible. *State v. Reid,* 36 Or App 417, 421, 585 P2d 411 (1978). In *State v. Smallwood,* 277 Or 503, 505-06, 561 P2d 600, *cert den* 434 US 849 (1977), the defendant's statements regarding exercise of his right to remain silent and to have a lawyer present were admissible. Because the defendant admitted the killing, there was little likelihood that inferences prejudicial to the defendant would be drawn by the jury. In *State v. Reid, supra,* we held that the admission of evidence of the defendant's exercise of his right to remain silent, if error, was harmless error, because evidence of defendant's guilt was substantial. Finally, in *State v. Nulph,* 31 Or App 1155, 1162, 572 P2d 642 (1977), *rev den* 282 Or 189 (1978), we excluded the defendant's statement requesting a lawyer, because "there was no admission of homicide to negate the prejudicial impact of the inference regarding *mens rea".*

However, the United States Supreme Court, in *Wainwright v. Greenfield,* 54 USLW 4077, ___ US ___, 106 S Ct 634, 88 L Ed 2d 623 (January 14, 1986), used a different analysis. Following its reasoning in *Doyle v. Ohio,* 426 US 610, 96 S Ct 2240, 49 L Ed 2d 91 (1976), the Court found it fundamentally unfair to use evidence of a defendant's refusal to answer questions before speaking with counsel to rebut a defense of mental disease or defect. The "fundamental unfairness" arose from the implicit assurance contained in the *Miranda* warnings[2] that silence will carry no penalty. 54 USLW at 4078, ___ US at ___. The Court noted that

"the state's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel." 54 USLW at 4079, ___ US at ___.

The Court distinguished *South Dakota v. Neville,* 459 US 553, 103 S Ct 916, 74 L Ed 2d 748 (1983), in which it had

---

[2] *See Miranda v. Arizona,* 384 US 436, 467-73, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

rejected the defendant's due process challenge regarding the prosecutor's reference to the defendant's refusal to take a blood-alcohol test, stating that, unlike the right to silence after *Miranda* warnings, the right to refuse to take an optional blood-alcohol test is not of constitutional dimensions.[3] Contrasting the blood-alcohol test warnings which expressly advised that refusal could be used to deprive the individual of his or her driving privileges with the *Miranda* warnings' implied assurances that silence will not be used against the suspect, the Court found that the blood-alcohol test warnings contained no misleading, implicit assurance that there would be no penalty for refusing to take the test. *Wainwright v. Greenfield, supra,* 54 USLW at 4079, ___ US at ___.

■ ■ Turning to the facts in this case, on retrial, post-*Miranda* warnings evidence of defendant's refusal to speak before consulting an attorney are inadmissible. Post-*Miranda* warnings silence "does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." 54 USLW at 4080 n 13, ___ US at ___ n 13. However, other statements made by defendant may be admissible. One example is the statement regarding his refusal to be photographed before consulting an attorney. Just as in *South Dakota v. Neville, supra,* where the defendant had no constitutional right to refuse to take a blood-alcohol test, defendant here had no constitutional right to refuse to be photographed or to consult an attorney before being photographed.[4]

Reversed and remanded for a new trial.

---

[3] The *Neville* Court asserted that a blood-alcohol test could be legitimately compelled by the government; a defendant's right to refuse "is simply a matter of grace bestowed by the South Dakota Legislature." 459 US at 565.

[4] The photography was pursuant to a court order.